UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOSEPH LI GARY STEVENSON, } <br> } <br> Plaintiff, } <br> } <br> v. } <br> } <br> NANCY BERRYHILL, } <br> Acting Commissioner of the } <br> Social Security Administration, } <br> } <br> Defendant. } | Case No.: 2:18-cv-0128-MHH |

## **MEMORANDUM OPINION**

Pursuant to 42 U.S.C. § 1383(c), plaintiff Joseph Li Gary Stevenson seeks judicial review of a final adverse decision of the Commissioner of Social Security. The Commissioner denied Mr. Stevenson's claim for a period of disability and supplemental security income. After careful review, the Court reverses and remands the Commissioner's decision.

## **I.     PROCEDURAL HISTORY**

Mr. Stevenson applied for a period of disability and supplemental security income on February 24, 2015. (Doc. 7-4, p. 29). Mr. Stevenson alleges that his disability began September 23, 2012. (Doc. 7-6, p. 2). The Commissioner initially denied Mr. Stevenson's claim on April 14, 2015. (Doc. 7-4, pp. 23; 17-28). Mr.

Stevenson requested a hearing before an Administrative Law Judge (ALJ). (Doc. 7-5, pp. 12-14). The ALJ issued an unfavorable decision on March 14, 2017. (Doc. 7-3, pp. 12-28). On November 27, 2017, the Appeals Council declined Mr. Stevenson's request for review (Doc. 7-3, pp. 2-7), making the Commissioner's decision final for this Court's appellate review. *See* 42 U.S.C. § 1383(c).

## II. STANDARD OF REVIEW

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's factual findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In evaluating the administrative record, the Court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted). If substantial evidence supports the ALJ's factual findings, then the Court "must affirm even if the

evidence preponderates against the Commissioner's findings." *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III. SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven that he is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

In this case, the ALJ found that Mr. Stevenson has not engaged in substantial gainful activity since February 24, 2015, the application date. (Doc. 7-3, p. 17).[1] The ALJ determined that Mr. Stevenson suffers from the severe impairment of paranoid schizophrenia. (Doc. 7-3, p. 17). Based on a review of the medical evidence, the ALJ concluded that Mr. Stevenson does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 7-3, p. 19).

In light of Mr. Stevenson's impairment, the ALJ evaluated Mr. Stevenson's residual functional capacity. The ALJ determined that Mr. Stevenson has the RFC to perform:

> a full range of work at all exertional levels but the following non-exertional limitations: no climbing of ladders, ropes, or scaffolds; no work around unprotected heights or hazardous machinery; limited to unskilled work with the ability to make simple work related decisions with few work place changes; can attend and concentrate for two-hour periods; work must be goal oriented, with no production paced or assembly line production requirement; must have no direct interaction with the general public; work must not require teamwork or coordination with others; and can work around coworkers, but must have no more than occasional interaction with coworkers.

---

[1] Social Security disability insurance benefits are available to insured claimants only. An insured claimant is one who "worked long enough and paid Social Security taxes. Unlike [disability insurance] benefits, [supplemental security income] benefits are not based on . . . prior work or a family member's prior work." https://www.ssa.gov/ssi/text-over-ussi.htm (last visited Mar. 6, 2019). Consequently, when a claimant seeks supplemental security income, but not disability insurance benefits, a disability onset date is not part of the analysis. Instead, the ALJ must verify that the claimant has not worked in a gainful capacity since filing the application.

(Doc. 7-3, p. 20).

The ALJ found that Mr. Stevenson has no past relevant work. (Doc. 7-3, p. 22). Based on this RFC and relying on testimony from a vocational expert, the ALJ found that jobs exist in the national economy that Mr. Stevenson can perform, including a laundry worker, folder, and marker. (Doc. 7-3, pp. 23-24). Accordingly, the ALJ determined that Mr. Stevenson has not been under a disability within the meaning of the Social Security Act. (Doc. 7-3, p. 24).

## IV. ANALYSIS

Mr. Stevenson argues that he is entitled to relief from the ALJ's decision because she did not address all the relevant medical evidence. (Doc. 9, p. 5). Mr. Stevenson also maintains that the ALJ did not properly evaluate the medical opinion evidence. (Doc. 9, pp. 6-7). The Court finds that the ALJ's decision is not supported by substantial evidence and remands this case for further development.

Mr. Stevenson first started experiencing paranoia in 2012 when he was 19 years old. (*See* Doc. 7-8, p. 43) ("no prior psychiatric history presenting to the [UAB] Emergency Department with reports of acute paranoia"). After receiving emergency treatment at UAB, Mr. Stevenson was admitted to "Psychiatric Services for further management of his paranoia." (Doc. 7-8, p. 43). Mr. Stevenson remained at UAB for about one week. (Doc. 7-8, p. 53).

5

Dr. Neville, a consultative psychologist, examined Mr. Stevenson in December of 2012 (relating to a prior disability claim). (Doc. 7-8, p. 51). Dr. Neville diagnosed Mr. Stevenson with delusional disorder. (Doc. 7-8, p. 51). Dr. Neville provided the following functional assessment:

> Mr. Stevenson is cognitively able to manage financial benefits, but because of his psychotic symptoms does not appear emotionally capable of doing so. Mr. Stevenson does not appear capable of functioning independently at present. He was able to understand instructions. His short-term memory appeared adequate. Mr. Stevenson's ability to carry out instructions did not appear impaired. His ability to respond appropriately to coworkers was considered mildly or moderately impaired. Mr. Stevenson's ability to cope with ordinary work pressures was considered moderately to severely impaired. He was cooperative with the examiner, but when previously employed he argued with his supervisors.

(Doc. 7-8, pp. 51-52).

Mr. Stevenson was admitted to Hill Crest Behavioral Health Services for psychosis in December of 2014. (Doc. 7-8, p. 53). Mr. Stevenson's current global assessment functioning score was 40, and his GAF score for 2013 was "unclear." (Doc. 7-8, p. 53). After two months of inpatient treatment, Mr. Stevenson "was no longer hearing voices" or having hallucinations. (Doc. 7-8, p. 55). Mr. Stevenson's GAF reportedly increased to 50. (Doc. 7-8, p. 53).[2]

---

[2] GAF stands for "Global Assessment of Functioning," and the "GAF Scale" may be used to report an individual's "overall functioning." *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR), p. 32, American Psychiatric Association (4th ed. text revision, 2000). "The GAF Scale is to be rated with respect only to psychological, social, and occupational functioning. . . . [and] is divided into 10 ranges of functioning." DSM-IV-TR, p. 32. The later *Diagnostic and Statistical Manual of Mental Disorders* (DSM-5), American Psychiatric

Dr. Barnett discharged Mr. Stevenson from Hill Crest in February of 2015 "to home accompanied by his mother[.]" (Doc. 7-8, pp. 53, 55). Mr. Stevenson's discharge plan including outpatient treatment at Western Mental Health Center. (Doc. 7-8, p. 55).

In February of 2015, Mr. Stevenson saw Mr. Campbell, an licensed professional counselor at WMHC. Mr. Campbell indicated that Mr. Stevenson "seem[ed] stable." (Doc. 7-8, p. 65). Mr. Campbell gave Mr. Stevenson a GAF score of 45. (Doc. 7-8, p. 65).

In March of 2015, Mr. Stevenson saw Dr. Glaser, a psychiatrist with WMHC. (Doc. 7-8, p. 61). Mr. Stevenson reported that he completed the ninth grade and worked for a local fast food restaurant in 2013. (Doc. 7-8, p. 61). Dr. Glaser diagnosed Mr. Stevenson with psychotic and cannabis use disorders, recorded a GAF score of 40, and estimated that Mr. Stevenson would require assisted outpatient treatment for 12 months or longer. (Doc. 7-8, p. 61).

In April of 2015, Mr. Stevenson visited clinical psychologist Dr. Holt for a consultative mental examination. (Doc. 7-8, pp. 70, 73). Dr. Holt reported that:

> Mr. Stevenson appears to be experiencing Schizophrenia, multiple episodes, currently in partial remission, 295.90 Borderline Intellectual Functioning, the 62.89, and Cannabis Use Disorder in reported sustained remission, 304.30. . . . The claimant has moderate

---

Association (5th ed. 2013), no longer refers to the GAF Scale and includes a different global functioning measure–"the WHO Disability Assessment Schedule (WHODAS) ...." DSM-5, p. 16.

situational stressors including occupational, educational, and economic problems. He has very limited coping and adaptive resources.

(Doc. 7-8, p. 73).

Dr. Holt stated that Mr. Stevenson's "prognosis [was] poor due to the severity of his condition." (Doc. 7-8, p. 73). Dr. Holt described Mr. Stevenson's impairments as markedly severe and believed that Mr. Stevenson could not function independently. (Doc. 7-8, p. 73). Concerning work, Dr. Holt stated that Mr. Stevenson's "ability to understand, remember, and carry out instructions in the workplace [was] moderately impaired for simple instructions and markedly impaired for complex instructions." (Doc. 7-8, p. 73). Also, Mr. Stevenson's "ability to respond appropriately to supervisors, coworkers and work pressures [was] markedly impaired." (Doc. 7-8, p. 73).

Mr. Stevenson visited Dr. Glaser again in September of 2015. (Doc. 7-9, p. 10). During this visit, Mr. Stevenson stated that "his medications continue[d] to work well" and he "denied any problems." (Doc. 7-9, p. 10). Mr. Stevenson was not experiencing "current formal thought alterations." Mr. Stevenson did not have suicidal or homicidal thoughts. (Doc. 7-9, p. 10). Dr. Glaser described Mr. Stevenson's thought process as "logical and goal directed." (Doc. 7-9, p. 10). Dr. Glaser gave an overall assessment that Mr. Stevenson's "illness is in acceptable

remission." (Doc. 7-9, p. 10). Dr. Glaser did not provide a vocational assessment or a GAF score for Mr. Stevenson.

In 2016, Mr. Stevenson returned to WMHC for outpatient treatment. (Doc. 7-9, p. 14). Mr. Stevenson stated that his long term goal was to get "[his] mind together, and find a way to some work." (Doc. 7-9, p. 14). Mr. Stevenson expressed that he would "not give up on getting better." (Doc. 7-9, p. 14). A record dated July 6, 2016, describes Mr. Stevenson's GAF as 45, and indicates that his highest 2015 GAF was 45, and his lowest 2015 GAF was 40. (Doc. 7-9, p. 15).

According to the GAF form, a GAF of 45 falls within the 50-41 range. (Doc. 7-9, p. 15). A person functioning in that range has symptoms and impairments that are moderately severe. (Doc. 7-9, p. 15). This range covers a person who:

> [has] [s]ome suicidal ideation, no clear plan, some risk for self harm OR [is] sometimes verbally aggressive, intimidating or demanding OR [is] sometimes circumstantial, tangential, illogical, perseverative, hard to understand, severe obsessive thoughts/compulsive rituals OR sometimes fails to maintain grooming and hygiene, sometimes needs prompts OR [has] any serious impairment in social, occupational, or school functioning (e.g., some problems at work/school: conflicts, fails to complete tasks, late, absenteeism). [Has] [f]ew friends, sometimes has interpersonal conflicts.

(Doc. 7-9, p. 15).

9

A GAF of 40 falls within the 40-31 range. (Doc. 7-9, p. 15). A person functioning in that range has symptoms and impairments that are severe. (Doc. 7-9, p. 15). This range covers a person who:

> [is] [o]ften preoccupied with suicidal ideation or self harm, [has] no intent to act, has plan to prevent self harm, OR often verbally aggressive, may sometimes become physically aggressive without injury OR often circumstantial, tangential, illogical, perseverative, or incoherent OR often fails to maintain grooming and hygiene, often needs grooming prompts OR [has a] major impairment in several areas, such as work or school, family, judgment, thinking, or mood (e.g., avoids friends, neglects family, [is] unable to work, [if a] child, frequently beats up younger children, [is] defiant at home, [is] failing at school.

(Doc. 7-9, p. 15).

Mr. Stevenson testified in 2017 that although he was "feeling better" sometimes he hears and sees things that other people do not experience. (Doc. 7-3, pp. 59-60). Mr. Stevenson also has difficulty focusing and concentrating. (Doc. 7-3, p. 60). Mr. Stevenson will "try to do something." (Doc. 7-3, p. 60). Then Mr. Stevenson will hear "the voices and everything" and he "just can't do it." (Doc. 7-3, p. 60).

In formulating Mr. Stevenson's RFC, the ALJ reasoned:

> [N]one of his treating doctors have indicated that he was disabled or otherwise unable to perform work related activities. Physically, he has no significant physical impairments or physical impairment caused limitation of function. Mentally, his treatment records confirm paranoid schizophrenia, and that it has required a couple of instances of brief inpatient treatment. However, in each instance, the claimant responded very well to routine treatment and medication management.

10

> Since his December 2014 hospitalization, treatment records document little more than routine follow up and medication management. The claimant has been doing well on his medication, with no side effects. He has made continuous improvement in symptoms. In addition, due to the significant improvement in symptoms, by September 2015, Dr. Glaser, the claimant's psychiatrist, specifically reported that the claimant's mental illness was in 'acceptable remission.' Treatment records since that time document not much more than routine follow up and medication management, with no medication side effects, and no complaints.

(Doc. 7-3, p. 21).

When determining Mr. Stevenson's RFC, the ALJ focused on Mr. Stevenson's mostly routine psychiatric treatment after his hospitalization in 2014. The ALJ also relied upon Mr. Stevenson's reported "acceptable remission" in 2015. The ALJ did not mention Mr. Stevenson's GAF scores in her decision. Because the ALJ did not address Mr. Stevenson's GAF scores, the Court cannot tell whether she considered them at all or, if she did, whether she gave them any weight.

A low GAF score may not be determinative of disability. *See Hillman v. Barnhart*, 48 Fed. Appx. 26, 29 at n.1 (3d Cir. 2002) (GAF score of 35 does not mean a claimant cannot work). Still, because the GAF evidence lends support to Mr. Stevenson's disability claim, the ALJ should have considered the evidence and provided reasons for either crediting or discrediting it in her decision.

The Supreme Court has stated that "Social Security proceedings are inquisitorial rather than adversarial," and the ALJ has a duty "to investigate the

facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) (citing *Richardson v. Perales*, 402 U.S. 389, 400-401 (1971)). Consistent with this principle, the Eleventh Circuit has remanded for lack of substantial evidence when the ALJ reached a result by focusing on one part of the record and ignoring other parts. *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986); *see also Brightmon v. Soc. Sec. Admin., Comm'r*, 743 Fed. Appx. 347, 351 (11th Cir. 2018) (citing *McCruter*).

The Eleventh Circuit explained in *McCruter* that "[i]t is not enough [for an ALJ] to discover a piece of evidence which supports [an administrative] decision, but to disregard other contrary evidence. The [ALJ's] review must take into account and evaluate the record as a whole." *McCruter*, 791 F.2d at 1548 (citing *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir. 1984) and *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487-88 (1951)); *see also Brightmon*, 743 Fed. Appx. at 351 ("Though our review is deferential, 'we do not act as automatons,' and, instead, '[w]e must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence.'") (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). Because the ALJ omitted any reference to the GAF evidence, the Court cannot confirm that she considered the entire record when deciding Mr. Stevenson's disability claim.

In *McCloud v. Barnhart*, 166 Fed. Appx. 410 (11th Cir. 2006), the Eleventh Circuit remanded a case for further consideration because the ALJ did not address a GAF score of 48 and did not clearly state the weight he gave to another GAF score of 45:

> We group Issues 3–6 together because we conclude that the ALJ erred when dealing with these issues and that the errors warrant remand. First, the parties agree that the ALJ erred when he labeled McCloud's 1998 GAF score as reflective of moderate symptoms. In fact, a GAF score of 41–50 indicates severe impairments. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed.1994). We are unable to determine from the record what weight the ALJ placed on the GAF score of 45; therefore, we reject the Commissioner's argument that any error was harmless. With the knowledge that a GAF score of 45 reflects severe impairments, the ALJ should determine what, if any, weight to place on the score. In addition to this error, the ALJ failed to consider McCloud's GAF score of 48 from June 2000, which occurred just days before she filed for SSI benefits, when determining whether she was disabled. On remand, the ALJ must also consider what, if any, weight to accord McCloud's June 2000 GAF score.

*McCloud*, 166 Fed. Appx. at 418.

## V. CONCLUSION

Based on the *McCloud* decision, it does not appear that the ALJ's decision in this case is supported by substantial evidence. Consistent with *McCloud*, remand seems appropriate so that the ALJ may consider and explain the weight assigned to each of Mr. Stevenson's GAF scores and the effect, if any, those GAF scores have on Mr. Stevenson's RFC. Because the parties did not focus on Mr. Stevenson's GAF scores in their briefs (Docs. 9, 10), within 7 days, the Commissioner may file

a supplemental brief to address Mr. Stevenson's GAF scores, the impact of the *McCloud* decision, and any other relevant authority that the Commissioner may wish to bring to the Court's attention. Mr. Stevenson may have 3 days to respond if the Commissioner files a brief.

**DONE** this 6th day of March, 2019.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE