UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JOSEPH LI GARY STEVENSON,** } | |
| } | |
|     **Plaintiff,** } | |
| } | |
| v. } | Case No.: 2:18-cv-0128-MHH |
| } | |
| **NANCY BERRYHILL,** } | |
| **Acting Commissioner of the** } | |
| **Social Security Administration,** } | |
| } | |
|     **Defendant.** } | |

## MEMORANDUM OPINION

After reviewing the parties' briefs and the administrative record in this case, the Court gave the parties an opportunity to address the ALJ's failure to discuss or give weight to Mr. Stevenson's GAF evidence which includes multiple GAF scores at or below 45. (Doc. 11, pp. 13-14). The Commissioner filed a brief. (Doc. 12). Mr. Stevenson did not.[1] The Court now supplements its initial opinion.

GAF stands for "Global Assessment of Functioning." For years, the American Psychiatric Association used the "GAF Scale" to measure an

---

[1] In his brief in support of his appeal, Mr. Stevenson argued that the ALJ did not consider medical evidence that post-dates September 2015, and he pointed out that one of the relevant post-September 2015 medical records includes a GAF assessment of 45. (Doc. 9, p. 5). Mr. Stevenson did not discuss his other GAF scores. Mr. Stevenson argued that "[t]he Eleventh Circuit Court of Appeals has held that the ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for the decision; this is to enable the reviewing court to determine whether the ultimate decision is based on substantial evidence . . ." (Doc. 9, pp. 5-6).

individual's "overall functioning" in light of the individual's mental impairments. *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR), p. 32, American Psychiatric Association (4th ed. text revision, 2000). More recently, the American Psychiatric Association replaced the GAF scale with a different global functioning measure – "the WHO Disability Assessment Schedule (WHODAS) ...." *Diagnostic and Statistical Manual of Mental Disorders* (DSM-5), p. 16, American Psychiatric Association (5th ed. 2013). Mr. Stevenson's medical records contain only GAF scores; there are no WHODAS scores in his medical records.

The Eleventh Circuit Court of Appeals has indicated that GAF scores may have a bearing on an ALJ's assessment of a claimant's ability to function with mental impairments. *McCloud v. Barnhart*, 166 Fed. Appx. 410 (11th Cir. 2006). In *McCloud*, the Eleventh Circuit found that the ALJ erroneously assessed part of the GAF evidence in the administrative record and ignored other relevant GAF evidence. The Court of Appeals stated:

> We group Issues 3–6 together because we conclude that the ALJ erred when dealing with these issues and that the errors warrant remand. First, the parties agree that the ALJ erred when he labeled McCloud's 1998 GAF score as reflective of moderate symptoms. In fact, a GAF score of 41–50 indicates severe impairments. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed.1994). We are unable to determine from the record what weight the ALJ placed on the GAF score of 45; therefore, we reject the Commissioner's argument that any error was harmless. With the knowledge that a GAF score of 45 reflects severe impairments, the ALJ should determine what, if any, weight to place on the score. In addition to this error, the ALJ failed to consider McCloud's GAF

> score of 48 from June 2000, which occurred just days before she filed for SSI benefits, when determining whether she was disabled. On remand, the ALJ must also consider what, if any, weight to accord McCloud's June 2000 GAF score.

*McCloud*, 166 Fed. Appx. at 418. Thus, the Eleventh Circuit held that an ALJ should consider relevant GAF scores, and when an individual has a GAF score that "reflects severe impairments, the ALJ should determine what, if any, weight to place on the score." *McCloud*, 166 Fed. Appx. at 418.

Mr. Stevenson alleges that his disability began on September 23, 2012. (Doc. 7-6, p. 2). Mr. Stevenson suffers from the severe impairment of paranoid schizophrenia. (Doc. 7-3, p. 17). Mr. Stevenson applied for a period of disability and supplemental security income on February 24, 2015, (Doc. 7-4, p. 29), and the ALJ held an administrative hearing on March 1, 2017. (Doc. 7-3, p. 55). A number of Mr. Stevenson's medical records from the period between December 29, 2014, and July 6, 2016, contain GAF scores. With one exception, all of the scores are below 50. (*See* Doc. 7-8, pp. 53, 58, 61) (admitted to Hill Crest Behavioral Health Service on Dec. 29, 2014 with GAF score of 40; discharged on Feb. 12, 2015 with GAF score of 50); (Doc. 7-8, p. 65) (Feb. 13, 2015 outpatient record from Western Mental Health Center reporting GAF score of 45); (Doc. 7-8, p. 61) (Mar. 16, 2015 psychiatric assessment at Western Mental Health Center, reporting GAF score of 40); (Doc. 7-9, pp. 6-7) (July 14, 2015 outpatient treatment record from Western Mental Health Center, reporting GAF score of 45);

(Doc. 7-9, pp. 14-15) (July 6, 2016 outpatient treatment record from Western Mental Health Center, reporting GAF score of 45, with highest GAF score over preceding 12 months of 45 and lowest of 40). Mr. Stevenson also was assessed with a GAF score of 40 in 2012 while he was hospitalized at UAB. (Doc. 7-8, p 36). Although the score falls outside of the relevant time period, the score indicates the longitudinal aspect of Mr. Stevenson's consistent GAF scores.[2]

The GAF rating scale in Mr. Stevenson's records indicates that a score in the 50-41 range indicates "Moderately Severe Symptoms & Impairments." (Doc. 7-9, p. 15). An individual whose GAF score falls in this range:

> [has] [s]ome suicidal ideation, no clear plan, some risk for self harm OR [is] sometimes verbally aggressive, intimidating or demanding OR [is] sometimes circumstantial, tangential, illogical, perseverative, hard to understand, severe obsessive thoughts/compulsive rituals OR sometimes fails to maintain grooming and hygiene, sometimes needs prompts OR [has] any serious impairment in social, occupational, or school functioning (e.g., some problems at work/school: conflicts, fails to complete tasks, late, absenteeism). [Has] [f]ew friends, sometimes has interpersonal conflicts.

(Doc. 7-9, p. 15). The GAF rating scale in Mr. Stevenson's records indicates that a score in the 40-31 range indicates "Severe Symptoms & Impairments." (Doc. 7-9, p. 15). An individual whose GAF score falls in this range:

> [is] [o]ften preoccupied with suicidal ideation or self harm, [has] no intent to act, has plan to prevent self harm, OR often verbally

---

[2] The ALJ cited the records from the September 2012 hospitalization "because it shows that the claimant responded very well to treatment, and medication, during his six-day hospitalization." (Doc. 7-3, p. 17).

> aggressive, may sometimes become physically aggressive without injury OR often circumstantial, tangential, illogical, perseverative, or incoherent OR often fails to maintain grooming and hygiene, often needs grooming prompts OR [has a] major impairment in several areas, such as work or school, family, judgment, thinking, or mood (e.g., avoids friends, neglects family, [is] unable to work, [if a] child, frequently beats up younger children, [is] defiant at home, [is] failing at school.

(Doc. 7-9, p. 15). The scale states that an evaluator assigning a GAF score should "[c]onsider psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." (Doc. 7-9, p. 15). The ALJ did not mention Mr. Stevenson's GAF scores in her decision. (Doc. 12, p. 1).

The Commissioner acknowledges that a GAF score "reflects an examiner's opinion regarding a patient's symptoms or possible difficulty in social, occupational, or school functioning at the time of the examination," but the Commissioner argues that "a GAF score may simply be an examiner's impression of the patient's alleged symptoms on one day with little or no bearing on the patient's functioning, particularly her ability to work." (Doc. 12, p. 2). The argument is internally inconsistent and inconsistent with the GAF scale. It is true that a GAF score reflects an examiner's observations of a patient on a particular day, but the score is based on the examiner's assessment of the patient's ability to function psychologically, socially, and occupationally. The assessment of a patient's ability to function socially, psychologically, and especially occupationally bears on the patient's ability to work. Here, virtually every day that an examiner

5

rated Mr. Stevenson over an 18-month period, the examiner assigned a GAF score of 45 or below; there is only one score above 45 during the 18-month period. The ALJ did not mention these consistently low GAF scores, and she did not assign a weight to the scores.

The Commissioner argues that the Eleventh Circuit Court of Appeals remanded for further proceedings in *McCloud* only because the ALJ in that case confused the meaning of a GAF score of 45. (Doc. 12, p. 5). That was one of the flaws that the Eleventh Circuit identified in the ALJ's analysis, but as discussed above, the Eleventh Circuit also made clear that the ALJ erred by failing to mention a second relevant GAF score and by failing to assign weight to the scores that indicated severe impairments.

The Commissioner asks the Court to depart from *McCloud* and follow two district court opinions, *Bailey v. Astrue*, No. 309-CV-383-J-JRK, 2010 WL 3220302 (M.D. Fla. Aug. 13, 2010), and *Davis v. Astrue*, No. 6:11-CV-2542-RDP, 2012 WL 4339562, at *7 (N.D. Ala. Sept. 17, 2012). In both *Bailey* and *Davis*, the ALJs failed to discuss a single low GAF score (a score of 45 in *Bailey* and a score of 52 in *Davis*).[3] The district courts found that the ALJs' decisions in the cases were supported by substantial evidence, and the courts rejected the argument that a

---

[3] The plaintiff in *Bailey* apparently had more than one GAF score, but the district court focused on the plaintiff's GAF score of 45. 2010 WL 3220302 at *9.

single low GAF score would suffice to establish disability given the medical evidence in the record.[4]

This Court respects the thoughtful analysis in both *Bailey* and *Davis* and recognizes that *McCloud*, *Bailey*, and *Davis* are persuasive authority, but the Eleventh Circuit's holding in *McCloud* fits the facts of this case best because the ALJ in this case did not mention (or assign weight to) a series of GAF scores that indicated severe and moderately severe impairments. As the Eleventh Circuit noted in *Thornton v. Comm'r, Soc. Sec. Admin.*, "[t]he Commissioner has concluded [] that the GAF scale does not have a direct correlation to the severity requirements in [the] mental disorders listings." 597 Fed. Appx. 604, 613 (11th Cir. 2015) (internal marks omitted). And "courts generally find that a GAF score of 50 or below is not in and off itself determinative of disability." *Jones v. Astrue*, 494 F. Supp. 2d 1284, 1288 (N.D. Ala. 2007). But the Eleventh Circuit has never held that GAF scores do not have a bearing on an individual's ability to work. In *McCloud*, the Eleventh Circuit implicitly recognized that GAF scores that reflect

---

[4] *See also Bruner v. Comm'r of Soc. Sec.*, No. 8:08-CV-1744-T-27GJK, 2009 WL 3052291 (M.D. Fla. Sept.23, 2009). The district court in *Bruner* found that "the ALJ's failure to discuss a single GAF score [of 50] does not require reversal under *McCloud* [.]" *Bruner*, 2009 WL 3052291, at *2; *see id.* ("Given the ambiguity (with respect to functional limitations) of a single GAF score of 50 and its assignment by a consultative examiner who concluded that Plaintiff suffered no significant cognitive impairment and had a fair prognosis, the Court agrees with the Magistrate Judge that the ALJ's failure to mention and specifically weigh the score does not show that the ALJ failed to consider all the medical evidence (either at step two or in the determination of Plaintiff's residual functional capacity.").

severe impairments may have a bearing on the assessment of an individual's ability to work. That is why the Eleventh Circuit ordered the ALJ on remand to explain the weight assigned to the low GAF scores in the medical records in that case.

The ALJ's opinion indicates that Mr. Stevenson's medical record from September 2015 strongly influenced her decision. In that record, Dr. Glaser, Mr. Stevenson's treating psychiatrist, reported that Mr. Stevenson's "illness was in acceptable remission." (Doc. 7-9, p. 10). The ALJ noted this finding repeatedly in her decision. But during the September 2015 visit, Dr. Glaser did not functionally assess Mr. Stevenson, assign a GAF score, or explain what he meant by "acceptable remission." Mr. Stevenson's GAF score remained at or below 45 both before and after Dr. Glaser's "acceptable remission" opinion.

The ALJ also relied heavily on Mr. Stevenson's testimony that he could handle his own medical care, and she found that he could "go to doctor's appointments" and "take medications." (Doc. 7-3, p. 19). But the record indicates that Mr. Stevenson's mother drove him to his mental health appointments, and she gave him his medication. (Doc. 7-7, pp. 23, 27, 31). A medical record from August 2016 states that Mr. Stevenson's mother asked the mental health provider to administer Mr. Stevenson's medication by injection because she was having trouble getting him to take his medication orally. Mr. Stevenson refused injections. (Doc. 7-9, p. 18).

During the administrative hearing in this case, when the ALJ asked Mr. Stevenson when his next psychiatric appointment was scheduled, Mr. Stevenson replied "I don't remember. I have to ask my mom." (Doc. 7-3, p. 62). Mr. Stevenson, who was 24 years old at the time of his administrative hearing, testified that he was trying to get a driver's license, but he had not taken the test, and he had not had a chance to read the driver's manual. (Doc. 7-3, p. 62; *see also* Doc. 7-8, p. 70 (indicating that Mr. Stevenson's mother brought him to his 2015 mental examination with Dr. Holt, and Mr. Stevenson presented a "Non-driver Identification as photo ID")). When the ALJ asked Mr. Stevenson about his education, he testified that he hoped to study for the GED "when [he] get[s] better," that his mental health provider had not sent him to vocational rehab to help him train for work, and that his mental provider had sent him to an inpatient education program at Hillcrest while he was hospitalized. (Doc. 7-3, pp. 64-65). He also testified that Western Mental Health was trying to place him in educational programs. (Doc. 7-3, p. 59).

The information in the record concerning Mr. Stevenson's intellectual capabilities and his ability to maintain his medical treatment independently could help explain his longitudinal GAF scores in the moderately severe to severe range. The ALJ found that "none of [Mr. Stevenson's] treating doctors have indicated that he was disabled or otherwise unable to perform work related activities," (Doc. 7-3,

p. 21), but the ALJ did not mention Mr. Stevenson's GAF scores which convey his treating doctors' assessment of his ability to function psychologically, socially, and occupationally. *Kent v. Acting Comm'r of the Soc. Sec. Admin.*, 651 Fed. Appx. 964, 966, n.4 (11th Cir. 2016) ("According to the DSM–IV, GAF is a standard measurement of an individual's overall functioning 'with respect only to psychological, social, and occupational functioning' using a 1 to 100 point scale. American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders 30–32 (4th ed. 2000).").

The Court does not mean to suggest that an ALJ must always discuss GAF evidence when more than one GAF score appears in the record. The Court simply follows the Eleventh Circuit's holding in *McCloud* and likewise holds that when a claimant has multiple GAF scores in the severe range, an ALJ should acknowledge the scores and assign weight to the scores. The holding is particularly relevant in a case like this in which the GAF scores are consistent with evidence of the claimant's actual overall functioning.[5]

In the absence of the GAF analysis, the Court cannot determine whether the ALJ's decision is supported by substantial evidence. As a result, the Court remands this matter for further proceedings consistent with this opinion.

---

[5] If necessary, the ALJ may contact the treating medical sources to request additional information about Mr. Stevenson's consistently low GAF scores.

**DONE** and **ORDERED** this April 3, 2019.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE